By the Court, Nelson, Ch. J.
It is not pretended that a pledgee, as such, has a right to dispose of the pledge before the pledger fails to comply with his engagement; on the contrary, it is conceded that such right, if it exist at all, must be conferred by an express or implied agreement. In this case, as the agreement between the parties was in writing, the question as to the defendants’ right to sell the stock before the note became due, must be determined, as in other cases depending upon the construction of written instruments, by consulting the terms and provisions of the agreement, and thus endeavoring to ascertain the understanding and intent of the parties. Bringing the question down to this test, and assuming that the parties expressed and intended to express their mutual understanding of the terms upon which the loan was made, it seems to me impossible to raise a doubt upon the true meaning and character of the transaction. The plaintiff applies to the defendants to borrow $21,000 for sixty days, offering as collateral security the 250 shares of stock in question. The defendants agree to the proposition, advance the money, and take a note for the amount; stating therein the deposit of the stock, and that the defendants are authorized to sell the same on non-payment of the loan. The note contains no consent, express or implied, that the defendants may sell or dispose of the stock before the loan becomes due. On the contrary, it contains a *597 strong implied prohibition against selling, except in a single event, viz. non-payment of the money at the day specified. There is not only no authority to sell before the happening of this event—which of itself is enough to refute the pretension of the defendants, and subject them to the consequences of a breach of trust—but, having provided for the sale at a given period and on a specified condition, all idea of authorizing one previous to that time is necessarily negatived upon the familiar maxim, expressio unius est exclusio alterius.
The defendants being stock-brokers and dealers in stock, their counsel offered to prove on the trial that it was the usage, when stock was transferred to such dealers by way of collateral security, not to hold it specifically, but to transfer it by hypothecation or otherwise, at pleasure, and, on payment or tender of the money advanced, to return an equal quantity of the same kind of stock; also, that this usage was general, and known to the agent who made the loan in question. The object of the offer was, to lay the foundation for insisting that the usage should be regarded as incorporated in and forming part and parcel of the agreement; thus making the latter import a consent on the part of the plaintiff, that the defendants might use the stock during the running of the loan the same as if they were the absolute owners. It is not necessary to determine what effect would be due to such proof in the case of a simple pledge as collateral security, without any further agreement. Possibly the known usage in like cases might be considered as attaching itself to the transaction, and constituting a part of it. But where the parties have chosen to prescribe for themselves the terms and conditions of the loan, they must be held to abide by them ; and we are especially bound to refuse effect to any general or particular usage, when in direct contradiction to the fair and legal import of a written contract.
The counsel for the defendants' relied mainly upon Nourse v. Prime, (4 John. Ch. Rep. 490, S. C. 7 id. 69 ;) but I have been unable to find any thing in'that case which conflicts with *598 the ruling of the circuit judge in the case before us. The contract there, it may be conceded, was substantially like the one under consideration; and there too, as here, the shares of stock deposited were not defined and designated so as to be distinguishable from other stock of the defendants in the same institution. Beyond this, however, it is difficult to discover the least analogy between the two cases. It appeared in JYourse v. Prime, that the defendants had at all times after the date of the note, a sufficient amount of stock standing in their own names, and subject to their absolute control, to have enabled them to restore the shares deposited by the complainant. The learned chancellor therefore held, that, such being the facts, the defendants had done nothing which entitled the complainant to the relief sought. Under the circumstances, he said, it was sufficient 11 that the defendants always had the requisite quantity of shares on hand, and the law will presume that the shares so on hand, from time to time, were the shares deposited, because the parties have not reduced the shares to any more certainty.”
Now, in the case before us, it does not appear that the defendants, during the running of the loan, kept on hand and under their absolute control, a number of shares equal to the amount deposited. On the contrary, for a part of the time they had but 72 shares in their own names. These, therefore, according to the doctrine of Nourse v. Prime, may perhaps be regarded as a part of the identical shares deposited ; and so indeed they were treated at the circuit. Having been kept on hand, the plaintiff was allowed only the price which they actually brought in the market on a sale after the note fell due. All the other stock of the defendants stood pledged for loans and advances to within ten per cent, of its market value.
I do not perceive any ground for interfering with the verdict in this case because of the rule of damages adopted by the circuit judge.
New trial denied.